## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

HEATHER SANTIAGO,

     Plaintiff,

vs.                                                    Case No.  3:21-cv-886-MMH-MCR

MARK S. INCH, in his individual
capacity, et al.,

     Defendants.

_____/

### O R D E R

**THIS CAUSE** is before the Court on Defendants Mark S. Inch, Shawn Swain, and Jim Godwin's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Doc. 33; Motion), filed February 25, 2022.  In the Motion, Inch, Swain, and Godwin (collectively, the DOC Defendants) seek dismissal of Counts I, II, III, and IV of Plaintiff Heather Santiago's Second Amended Complaint (Doc. 29; Second Amended Complaint), filed January 31, 2022.  Santiago timely filed a response in opposition to the Motion.  See Plaintiff's Response to Defendants Mark S. Inch, Shawn Swain and Jim Godwin's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Doc. 34; Response), filed March 10, 2021.  Accordingly, this matter is ripe for review.

## I.     Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372

F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

This case arises from events that occurred on September 3, 2017, during a visit by Santiago and her daughter to the Reception and Medical Center (RMC) operated by the Florida Department of Corrections (DOC).  See Second Amended Complaint ¶ 15.  While Santiago was at RMC, Swain and Godwin, both correctional officers, had Santiago removed from the visitation area and escorted to the parking lot. Id.  According to Santiago, Swain and Godwin told

---

[1] In considering the Motion, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Santiago, and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the Second Amended Complaint and may well differ from those that ultimately can be proved.  Because this matter is before the Court on the Motion filed by the DOC Defendants, the Court focuses its discussion on the claims and facts relative to those Defendants.

her that Godwin's canine had "alerted on her vehicle for the presence of narcotics." Id. ¶ 16. Santiago alleges that Godwin asked for consent to search the vehicle and that she refused. Id. ¶ 17. Santiago asserts that Swain and Godwin then told her that "they would get a warrant so she should consent to the search of the vehicle because they were going to search it anyway." Id. ¶ 18. In response to that statement, Santiago acquiesced to the search. Id. ¶ 19. In the trunk of Santiago's vehicle, Godwin found a small change purse that contained synthetic marijuana. Id. ¶¶ 19–21. Santiago maintains that Godwin contacted a local sheriff's deputy, Defendant Phillip Sellers, who went to RMC and arrested Santiago for possessing synthetic narcotics and smuggling contraband into a prison. Id. ¶ 29. Santiago alleges that, during the subsequent criminal case, the state attorney's office disclosed that "there were 'irregularities' in the training of the canine handlers and in relation to the 'investigation, evidence, recordkeeping, and search and seizure' in Heather Santiago's case." Id. ¶ 34. According to Santiago, the state attorney's office also turned over information from the DOC's Office of Inspector General, which stated that correctional officers with canines are not law enforcement officers and lack authority to arrest or transfer probable cause to law enforcement officers. Id. ¶ 33. The state attorney's office dismissed the criminal charges against Santiago on December 29, 2018. Id. ¶ 36.

Based on these and other allegations, Santiago initiated this action on September 3, 2021, by filing her Complaint (Doc. 1; Original Complaint).  In the Original Complaint, Santiago sought an award of damages under 42 U.S.C. § 1983 against Swain, Godwin, Sellers, and the DOC.  See generally id.  The DOC moved to dismiss, arguing that, under the Eleventh Amendment to the U.S. Constitution, it is immune from a suit for damages.  See generally Defendant Florida Department of Corrections' Motion to Dismiss Counts I and II of Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 5), filed October 28, 2021.  In response to that motion to dismiss, Santiago filed her Amended Complaint (Doc. 10; First Amended Complaint) on November 11, 2021.  In the First Amended Complaint, instead of naming the DOC itself as a defendant, Santiago sued Mark S. Inch in his official capacity as secretary of the DOC.  See id. ¶ 11.  The DOC Defendants then filed another motion to dismiss, asserting that the Eleventh Amendment barred the claims for damages against Inch in his official capacity.  See Defendants Mark S. Inch, Shawn Swain, and Jim Godwin's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law (Doc. 25) at 5, filed January 4, 2022.  In the Second Amended Complaint, Santiago chose no longer to sue Inch in his official capacity and instead sued him "in his individual capacity."  Second Amended Complaint ¶ 7.

In Count I of the Second Amended Complaint, Santiago contends that Inch failed to train and supervise his employees in violation of § 1983.  See id. ¶¶ 37–43.  In relevant part, Santiago alleges,

> Plaintiffs are informed and believe, and thereupon allege, that prior to the incident alleged herein, defendant, INCH facilitated, permitted, ratified and condoned similar acts and was deliberately indifferent to the plaintiff in particular.  Said defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which create the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

Id. ¶ 41.  In Count II, Santiago asserts a similar claim against Inch, alleging that he deprived her of her rights by

> a. Selecting, retaining, and assigning officers to their prison who exhibit deliberate indifference and reckless disregard for the constitutional and statutory rights for visitors of the prison;
> b. Failing to adequately train, supervise, and control officers to not overstep their roles as corrections officers[;]
> c. Failing to adequately discipline officers involved in misconduct[;]
> d. Condoning and encouraging officers in the belief that they can violate the rights of persons such as the plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits[; and]
> e. Failing to train corrections officers in understanding they do not have law enforcement authority to detain or arrest visitors at the jail and authority [to] transfer probable cause.

Id. ¶ 47; see also id. ¶¶ 11–12 (similar).  In Count III, Santiago maintains that Swain deprived her of her Fourth, Fifth, and Fourteenth Amendment rights in

violation of § 1983.  <u>See</u> <u>id.</u> ¶¶ 51–58.  Specifically, Santiago alleges that Swain violated her right to be free from unreasonable searches and seizures:

> a. By having plaintiff and her minor daughter unlawfully seized and pulled out of visitation to be escorted to the parking lot;
> b. Then unlawfully searching Plaintiff['s] vehicle by using the unlawful threat of law enforcement authority;
> c. Unlawfully seizing Plaintiff's vehicle and searching Plaintiff's vehicle;
> d. Unlawfully using a K-9 to establish probable cause to unlawfully search a vehicle when the K-9 and its handler do not possess the proper training or law enforcement certification nor authority to establish probable cause[; and]
> e. Unlawfully detaining the Plaintiff when the Defendant does not have any law enforcement authority to detain or arrest.

<u>Id.</u> ¶ 54.  In Count IV, Santiago asserts a similar § 1983 claim against Godwin based on nearly identical allegations.  <u>See</u> <u>id.</u> ¶¶ 59–66.  And, in Counts V and VI, Santiago alleges claims against Sellers.  <u>See</u> <u>id.</u> ¶¶ 67–86.  In the Motion, the DOC Defendants move to dismiss Counts I through IV.  <u>See</u> Motion at 1.

## III.   Discussion

Having reviewed the filings and the applicable law, the Court finds that the Motion is due to be granted, in part, and denied, in part.  For the reasons discussed below, the Court will grant the Motion as to the claims asserted against Inch but will deny the Motion as to the claims asserted against Swain and Godwin.

### A.      Counts I–II: Claims Against Inch

In Counts I and II of the Second Amended Complaint, Santiago asserts that Inch is liable under 42 U.S.C. § 1983 for actions that he allegedly took as the head of the DOC.  See Second Amended Complaint ¶¶ 41, 47.  In the Motion, the DOC Defendants argue that Counts I and II should be dismissed because Santiago's allegations are too conclusory to state plausible causes of action.  See Motion at 5–7.  In addition, the DOC Defendants contend that Inch is entitled to qualified immunity because Santiago has failed to plausibly allege that he violated one of her clearly established constitutional rights.  See id. at 7–10.  In a footnote, the DOC Defendants note that Inch could not have caused the alleged violations of Santiago's rights in 2017 because the DOC did not employ Inch until 2019.  See id. at 10 n.2.  In her Response, Santiago acknowledges that Inch was not the secretary of the DOC at the time of her alleged injuries.  See Response at 6 ("[A]t the time the incident occurred there was another Secretary of the Florida Department of Corrections.  Plaintiff named the appropriate Secretary of the Florida Department of Corrections at the time the initial Complaint was filed which was Mark S. Inch.").  Regardless, she somewhat remarkably argues that she has adequately pled that Inch implemented policies "that allowed Corrections Officers to use uncertified K-9's to conduct unlawful searches as if they had law enforcement authority" and "that allowed

corrections officers to search civilians as if they were law enforcement officers."

Id. at 6–7.

As to the individual liability of a supervisor under § 1983, the Eleventh

Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez [v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)] (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone [v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)] (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008), overruled on other

grounds as recognized by Randall, 610 F.3d at 709 (rejecting the application of

a heightened pleading standard for § 1983 cases involving qualified immunity);

see also Keith v. DeKalb County, 749 F.3d 1034, 1047–48 (11th Cir. 2014).  In

sum,

> To state a claim against a supervisory defendant, the plaintiff
> must allege (1) the supervisor's personal involvement in the
> violation of his constitutional rights,[2] (2) the existence of a
> custom or policy that resulted in deliberate indifference to the
> plaintiff's constitutional rights,[3] (3) facts supporting an inference
> that the supervisor directed the unlawful action or knowingly
> failed to prevent it,[4] or (4) a history of widespread abuse that put
> the supervisor on notice of an alleged deprivation that he then
> failed to correct.  See [West v. Tillman, 496 F.3d 1321, 1328–29
> (11th Cir. 2007)] (listing factors in context of summary judgment).
> A supervisor cannot be held liable under § 1983 for mere
> negligence in the training or supervision of his employees.
> Greason v. Kemp, 891 F.2d 829, 836–37 (11th Cir. 1990).

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).[5]

---

[2]  See Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

[3]  See Goebert, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[4]  See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct.  These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[5]  The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Here, in the Second Amended Complaint, Santiago does not allege that Inch personally participated in the violation of her rights, and she has not plausibly pled that there is a causal connection between Inch's actions and the constitutional violation.  <u>See</u> Second Amended Complaint ¶¶ 11–12, 41, 47. Santiago's allegations amount to nothing more than "labels and conclusions" that the Court need not accept as true.  <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>Smith v. Owens</u>, 625 F. App'x 924, 927 (11th Cir. 2015) (per curiam) ("[A]lthough a plaintiff may establish a causal connection by alleging that a supervisor's improper custom resulted in deliberate indifference, Plaintiff alleged no facts, only conclusory allegations, to show that Owens, Toole, Paul, and Fowler established such improper customs.").  In addition, Santiago's allegations concerning Inch's actions in 2017 are implausible because, as she herself admits, Inch was not employed by the DOC until 2019.[6]  <u>See</u> Motion at

---

[6] Given this acknowledgement, the Court will take judicial notice of this fact pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.  <u>See</u> <u>Shahar v. Bowers</u>, 120 F.3d 211, 214 (11th Cir. 1997) (en banc) (per curiam) (discussing "the kinds of things about which courts ordinarily take judicial notice," including "matters of political history: for instance, who was president in 1958" and facts such as whether a public official "issued a particular official opinion on a certain date"); <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 842 (11th Cir. 2004) (taking judicial notice of stock prices while reviewing the dismissal of a complaint); <u>Chapman v. Abbott Labs.</u>, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ("A court need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.").

In citing to <u>Chapman</u>, the Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

10 n.2; Response at 6.  Thus, Santiago's allegations are not merely implausible but, in fact, impossible.[7]  Because Inch could not have personally participated in or caused the alleged constitutional violations, the Court will dismiss Counts I and II.

**B.    Counts III–IV: Claims Against Swain and Godwin**

In Counts III and IV, Santiago asserts that Swain and Godwin, respectively, are liable under § 1983 for conducting an unreasonable search of her vehicle and unlawfully arresting her in violation of her Fourth and Fourteenth Amendment rights. See Second Amended Complaint ¶¶ 54, 62.  The DOC Defendants argue that these claims should be dismissed because Swain and Godwin are immune from suit under the doctrine of qualified immunity. See Motion at 10–14.  They contend that Swain and Godwin are entitled to qualified immunity because Santiago has failed to plausibly allege that Swain and Godwin violated her clearly established constitutional rights.  See id. at 13–14.  According to the DOC Defendants, Swain and Godwin did not violate Santiago's clearly established rights when they searched her vehicle because

---

[7] It appears that in drafting the Second Amended Complaint, counsel failed to consider the legal implications of suing the DOC and Inch in his official capacity versus suing Inch in his individual capacity.  Notably, the substance of Santiago's allegations against the DOC and Inch did not change at all.  See Original Complaint ¶¶ 11, 41, 47; First Amended Complaint ¶¶ 11, 41, 47; Second Amended Complaint ¶¶ 11, 41, 47.  The Court questions whether the Second Amended Complaint truly comports with the requirements of Rule 11 and cautions counsel to exercise greater care in future pleadings.

they had arguable probable cause to conduct the search after Godwin's canine detected the presence of narcotics.  See id. at 13–14.[8]  In her Response, Santiago argues that Swain and Godwin are not entitled to qualified immunity because they violated her clearly established constitutional rights by searching her vehicle and arresting her when they lacked the law enforcement authority to conduct searches and make arrests.  See Response at 11.  Santiago also generally asserts that "Swain and Godwin conducted unlawful searches with their uncertified K-9 dogs."  Id. at 12.

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law."  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  When facing such allegations, a defendant may assert the defense of qualified immunity.  The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "all but the plainly

---

[8]  The DOC Defendants also urge the Court to dismiss Counts III and IV to the extent that Santiago asserts violations of the Fifth Amendment.  See Motion at 14–15.  Santiago represents that her mention of the Fifth Amendment was a scrivener's error.  See Response at 13.  Based on Santiago's representation, the Court construes Counts III and IV as not asserting any claims under the Fifth Amendment.

incompetent or those who knowingly violate the law." <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)); <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1266 (11th Cir. 2003). Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) (en banc), <u>abrogated on other grounds by</u> <u>Twombly</u>, 550 U.S. 544).

To be entitled to qualified immunity, defendants bear the initial burden of showing that their conduct was within the scope of their discretionary authority. <u>See</u> <u>id.</u> at 1194; <u>Webster v. Beary</u>, 228 F. App'x 844, 848 (11th Cir. 2007). Here, Swain and Godwin represent that it is undisputed that, at all times material to this case, they were acting within the scope of their discretionary authority.[9] <u>See</u> Motion at 12. Santiago does not contest this representation. <u>See</u> Response at 9–13. Accordingly, the burden shifts to Santiago to demonstrate that qualified immunity is not appropriate using the

---

[9] "A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority." <u>Jones v. City of Atlanta</u>, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting <u>Lenz v. Winburn</u>, 51 F.3d 1540, 1545 (11th Cir. 1995)). In applying this test, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." <u>Est. of Cummings v. Davenport</u>, 906 F.3d 934, 940 (11th Cir. 2018) (quoting <u>Mikko v. City of Atlanta</u>, 857 F.3d 1136, 1144 (11th Cir. 2017)). State law establishes "the scope of a state official's discretionary authority." <u>Id.</u>

two-prong test established by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). In accordance with <u>Saucier</u>, the Court must ask whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct violated a constitutional right." <u>Id.</u>; <u>see also</u> <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002); <u>Beshers v. Harrison</u>, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007)). The Court must also ask whether the right allegedly violated was clearly established at the time of the violation. <u>Hope</u>, 536 U.S. at 739; <u>Saucier</u>, 533 U.S. at 201; <u>Scott</u>, 550 U.S. at 377; <u>Underwood v. City of Bessemer</u>, 11 F.4th 1317, 1328 (11th Cir. 2021) ("[W]e ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct.") (internal quotations omitted). The Court may consider these questions in whichever order it chooses, and qualified immunity will protect the defendant if the answer to either question is "no." <u>Pearson</u>, 555 U.S. at 232, 236;[10] <u>Underwood</u>, 11 F.4th at 1328. As such, "[t]o deny qualified immunity at the motion to dismiss stage, [the Court] must conclude both that the allegations in the

---

[10] In <u>Pearson</u>, the Supreme Court modified the procedure mandated in <u>Saucier</u> permitting trial judges the discretion to determine which prong of the qualified immunity analysis should be resolved first. <u>See</u> <u>Pearson</u>, 555 U.S. at 236.

complaint, accepted as true, establish a constitutional violation <u>and</u> that the constitutional violation was 'clearly established.'" <u>Sebastian v. Ortiz</u>, 918 F.3d 1301, 1307 (11th Cir. 2019) (citing <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010)).

### 1.    Violation of Constitutional Right

The Court first considers whether Santiago has plausibly alleged that Swain and Godwin violated her constitutional rights under the Fourth Amendment.    The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV.  The Eleventh Circuit has instructed that "[t]he basic premise of search and seizure doctrine is that searches undertaken without a warrant issued upon probable cause are '<u>per</u> <u>se</u> unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" <u>United States v. Alexander</u>, 835 F.2d 1406, 1408 (11th Cir. 1988) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).  One of those "well-established exceptions" is the automobile exception.  <u>Id.</u> at 1408–09.  Under this exception, "the search and seizure of vehicles without a warrant is permissible when the police have probable cause to believe a vehicle contains contraband."[11]  <u>United States v. Virden</u>, 488 F.3d 1317, 1321 (11th Cir. 2007); see <u>Hearn v. Bd. of Pub. Educ.</u>,

---

[11]  The vehicle must be "readily mobile (i.e., operational)."  <u>United States v. Tamari</u>, 454 F.3d 1259, 1261 (11th Cir. 2006).  The mobility of Santiago's vehicle is not in dispute here.

191 F.3d 1329, 1333 (11th Cir. 1999).  "Probable cause exists when there is 'a fair probability that contraband or evidence of a crime will be found.'"  Virden, 488 F.3d at 1322 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Here, Swain and Godwin argue that they had probable cause to search Santiago's vehicle because their canine alerted to her vehicle.  See Motion at 13–14.  The Eleventh Circuit has "long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'"  United States v. Tamari, 454 F.3d 1259, 1264–65 (11th Cir. 2006) (quoting United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993)); Hearn, 191 F.3d at 1333 ("Furthermore, the alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but probable cause to search that property.").  In Florida v. Harris, the Supreme Court addressed which types of dogs can provide probable cause:

> If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.  The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs.

568 U.S. 237, 246–47 (2013); see also United States v. Sentovich, 677 F.2d 834, 838 n.8 (11th Cir. 1982) (endorsing the view that "training of a dog alone is sufficient proof of reliability"); United States v. Nelson, 309 F. App'x 373, 375 (11th Cir. 2009) (per curiam) ("A dog sniff must be sufficiently reliable in order to establish probable cause, and this reliability is generally present if the dog is

'well-trained.'" (quoting <u>Illinois v. Caballes</u>, 543 U.S. 405 (2005))).  In the Second Amended Complaint, Santiago alleges that "the K-9 and its handler do not possess the proper training or law enforcement certification."  Second Amended Complaint ¶¶ 54, 62.  Accepting this factual allegation as true and drawing all reasonable inferences in favor of Santiago, the Court finds that this allegation "allows the [C]ourt to draw the reasonable inference" that Swain and Godwin are "liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  If, as alleged, Godwin's canine was not a "well-trained" drug-sniffing dog, the dog's alert did not provide probable cause to search Santiago's vehicle.[12]  <u>Nelson</u>, 309 F. App'x at 375.  In the absence of probable cause or some other circumstance that rendered the search reasonable,[13] Swain and Godwin's warrantless search violated Santiago's Fourth Amendment rights.

## 2.    Clearly Established Right

The Court next considers whether it was clearly established that Santiago had a right to be free from a warrantless search of her vehicle when  the officer's

---

[12]   Swain and Godwin also argue that the success of the search demonstrates its reasonableness.  <u>See</u> Motion at 14 ("Moreover, the presence of 'arguable probable cause' is further supported by the fact that a subsequent search of the Plaintiff's vehicle revealed two cylindrical objects which contained 56.1 grams of synthetic marijuana.").  This argument is unavailing.  <u>See</u> <u>Harris</u>, 568 U.S. at 249 ("[W]e do not evaluate probable cause in hindsight, based on what a search does or does not turn up.").

[13]  Swain and Godwin, relying solely on their contention that they had probable cause, do not argue that any other circumstance or Fourth Amendment doctrine justified the search.  <u>See</u> Motion at 13–14.

only asserted justification was an alert from a dog that was not properly trained.  The Supreme Court has instructed that in order

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope, 536 U.S. at 739 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  For purposes of this analysis the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the plaintiff was unconstitutional.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope, 536 U.S. at 741); see also Marsh, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone of qualified immunity.").  The Eleventh Circuit has addressed a plaintiff's burden in establishing the existence of clearly established law:

> Under this Court's precedent, a right can be clearly established in one of three ways.  [A plaintiff] must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."  Lewis [v. City of West Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009)].  Although we have recognized that options two and three can suffice, the Supreme Court has warned us not to "define clearly established law at a high level of generality."  Plumhoff v. Rickard, 572 U.S. 765, 779, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) (quotation marks omitted).  For that reason, the second and third paths are rarely-trod ones.  See Gaines v. Wardynski, 871 F.3d 1203, 1209 (11th

Cir. 2017) (collecting cases).  And when a plaintiff relies on a "general rule[ ]" to show that the law is clearly established, it must "appl[y] with obvious clarity to the circumstances."  Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (quotation marks omitted; emphasis added); see also Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) ("[I]f a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question.").

Crocker v. Beatty, 995 F.3d 1232, 1240 (11th Cir. 2021) (final three alterations in original).  Thus, where the words of the federal statute or federal constitutional provision are specific enough "to establish clearly the law applicable to particular conduct and circumstances," then the plaintiff can overcome the qualified immunity privilege, even in the absence of case law. Vinyard, 311 F.3d at 1350.  In this type of "obvious clarity" case, "the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  Id.

Alternatively, where the conduct alleged is not so egregious as to violate a statutory or constitutional right on its face, courts look to case law to determine whether the law is "clearly established."  Id. at 1351.  If the case law contains "some broad statements of principle" which are "not tied to particularized facts," then it may be sufficient to clearly establish the law applicable in the future to different facts.  Id.  However, to provide officials with sufficient warning, the case law must establish a principle such that "every

objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. Last, in the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law. Id. at 1352. Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court. Id. at 1351; Crocker, 995 F.3d at 1240 (same). However, a case "on all fours" with materially identical facts is not required to establish "fair warning" to government officials. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (discussing the impact of Hope on Eleventh Circuit precedent).

Because of these rules of law, in qualified immunity cases involving probable cause, the question "is not whether probable cause actually existed." Swint v. City of Wadley, 51 F.3d 988, 996 (11th Cir. 1995). Rather, the Court must ask "whether, viewing the facts in a light favorable to the non-movant, there was arguable probable cause." Id. (quoting Moore v. Gwinnett County, 967 F.2d 1495, 1497 (11th Cir. 1992)). When "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed," the defendants should not be held

personally liable.  Id. (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

Here, the Court concludes that the right allegedly violated was clearly established.  Case law from the Supreme Court and the Eleventh Circuit contains "broad statements of principle" that gave Swain and Godwin "fair warning" that their alleged conduct was unlawful.  Vinyard, 311 F.3d at 1350–51.  Longstanding binding precedent established that the officers needed to have probable cause before searching Santiago's vehicle.  See Virden, 488 F.3d at 1321–22; Alexander, 835 F.2d at 1408.  And, before Swain and Godwin's alleged actions in 2017, the Supreme Court and the Eleventh Circuit had explained that a dog's alert is sufficiently reliable to provide probable cause only if the dog is well-trained in locating contraband.  See Harris, 568 U.S. at 246–47; Sentovich, 677 F.2d at 838 n.8; Nelson, 309 F. App'x at 375.  In light of those settled principles of law, the Court does not believe that "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed" based on the facts as alleged by Santiago.  Swint, 51 F.3d at 996 (quoting Von Stein, 904 F.2d at 579).  According to Santiago's allegations, the dog was not properly trained, and, thus, its alert did not provide Swain and Godwin with arguable probable cause.  Because Santiago has alleged that Swain and Godwin violated her clearly established right to be free from a warrantless search of her vehicle without

probable cause, the Court finds that Swain and Godwin are not entitled to qualified immunity at this stage of the proceedings.[14]  Consequently, the Court will not dismiss Counts III and IV of the Second Amended Complaint on that basis.

## IV.   Conclusion

Because Inch was not the secretary of the DOC at the time of the alleged constitutional violation, he cannot be individually liable.  Therefore, the Motion is due to be granted as to the claims against him.  The Motion is due to be denied, however, as to the claims against Swain and Godwin because Santiago has plausibly alleged that they violated one of her clearly established constitutional rights.

Accordingly, it is

**ORDERED:**

1.   Defendants Mark S. Inch, Shawn Swain, and Jim Godwin's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Doc. 33) is **GRANTED, in part**, and **DENIED, in part**.

---

[14] Whether these allegations can be proven is a question for another day.

A.   The Motion is **GRANTED** to the extent that Counts I and II of the Second Amended Complaint (Doc. 29) are **DISMISSED**.

B.   Otherwise, the Motion is **DENIED**.

2.   The Clerk of the Court is directed to terminate Defendant Mark S. Inch from the Court docket.  This case will proceed on the remaining claims against Shawn Swain, Jim Godwin, and Phillip Sellers.

**DONE AND ORDERED** in Jacksonville, Florida, on September 6, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record