**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HEATHER SANTIAGO,

        Plaintiff,

vs.                              Case No.  3:21-cv-886-MMH-MCR

SHAWN SWAIN, et al.,

        Defendants.

_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Deputy Phillip Sellers'

Motion for Summary Judgment (Doc. 49; Sellers's Motion), filed March 28,

2023, and Defendant Officer Shawn Swain and Officer Jim Godwin's Motion for

Partial Summary Judgment (Doc. 52; DOC Officers' Motion), filed April 4, 2023.

In support of his motion, Sellers, a deputy sheriff employed by the Union County

Sheriff's Office, submitted a number of exhibits. <u>See</u> Notice of Filing Documents

in Support of Defendant Deputy Phillip Sellers' Motion for Summary Judgment

(Doc. 43; Sellers's Notice), filed March 22, 2023; Notice of Filing Redacted

Document in Support of Defendant Deputy Phillip Sellers' Motion for Summary

Judgment (Doc. 48; Redacted Notice), filed March 28, 2023.  In the Officers'

Motion, Defendants Godwin and Swain, who are corrections officers with the

Florida Department of Corrections (DOC), rely on the exhibits filed by Sellers

as well as Santiago's answers to Sellers's interrogatories, which they have submitted for the Court's consideration. <u>See</u> Notice of Filing Documents in Support of Defendant Officer Shawn Swain and Officer Jim Godwin's Motion for Partial Summary Judgment (Doc. 51; DOC Officers' Notice), filed April 4, 2023. Plaintiff Heather Santiago filed responses in opposition to both motions and attached various exhibits to her responses. <u>See</u> Plaintiff's Response to Defendant, Deputy Phillip Sellers Motion for Summary Judgment (Doc. 54; Response to Sellers), filed April 18, 2023; Plaintiff's Response to Defendant, Officer Shawn Swain and Officer Jim Godwin's Motion for Partial Summary Judgment (Doc. 57; Response to DOC Officers), filed April 25, 2023. Defendants then filed replies. <u>See</u> Defendant Deputy Sellers' Reply to Plaintiff's Response to Motion for Summary Judgment (Doc. 56; Sellers's Reply), filed April 25, 2022; Defendant Officer Shawn Swain and Officer Jim Godwin's Reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment (Doc. 58; DOC Officers' Reply), filed May 9, 2023. Sellers attached one additional exhibit to his reply. <u>See</u> Sellers's Reply at 8–16. Accordingly, this matter is ripe for review.

## I.    Background Facts[1]

On September 3, 2017, Santiago and her eleven-year-old daughter drove to Reception and Medical Center, a Florida state prison, to visit an inmate.  See Sellers's Notice, Ex. 4: Deposition of Heather Santiago (Doc. 43-4; Santiago Dep.) at 34–35, 38–39.  Although Santiago had carpooled with others in the past, only her daughter was with her that day.  See id. at 35–36, 39; DOC Officers' Notice, Ex. 1: Notice of Plaintiff's Verified Answers to Defendant Phillip Sellers' Interrogatories (Doc. 51-1; Interrogatory Answers) at 2. Santiago arrived shortly before 8 or 9 a.m.  See Santiago Dep. at 38.

On that day, Godwin was assigned to the Contraband Intelligence Unit with a drug-sniffing canine.  See Sellers's Notice, Ex. 3: Department of Corrections Incident Report (Doc. 43-3; DOC Report) at 1.  While performing a parking lot inspection, Godwin's canine alerted on Santiago's car.  See id.  After the canine alerted on Santiago's car, Godwin and Swain, the prison's duty-warden, approached Santiago in the prison's visitation area.  See Santiago Dep. at 40; DOC Report at 1.  The corrections officers told Santiago and her daughter to come with them.  See Santiago Dep. at 41, 91–92 ("[D]uring visitation, they

---

[1]  For the purposes of resolving the motions, the Court views all disputed facts and reasonable inferences in the light most favorable to Santiago.  The Court notes that these facts may differ from those ultimately proved at trial.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

approached me and said, 'Ms. Santiago, we need you to come with me, you and your daughter' . . . .").

Godwin and Swain took Santiago and her daughter to a room that was smaller than the visitation room. See id. at 42, 92. The door was shut, but the officers never said that Santiago could not leave. See id. at 93. In all, the four individuals spent about 20 minutes in the smaller room. See id. at 92–93. The officers told Santiago that Godwin's canine had alerted on her car. See id. at 42. They asked for Santiago's consent to search the car. See id. at 93. Santiago refused to give her consent. See id. at 49, 93. The officers then said that her refusal did not matter because they could get a warrant. See id. at 94. In her deposition, Santiago testified that, even after the officers said they would get a warrant, she did not consent to the search. See id. at 46. According to Santiago, one of the officers grabbed her keys and said, "Come on. We're going to search your car." Id. at 47, 94–95. Santiago and her daughter followed the officers to her car in the parking lot. See id. at 42–43, 95.

While Santiago observed "[f]rom a distance," the officers searched her car with their backs turned to her. Id. at 56, 97. In the trunk, the officers found a small change purse. See id. Inside the purse, the officers discovered feminine hygiene products, condoms, and two cylindrical items wrapped in electrical tape. See DOC Report at 1; Redacted Notice, Ex. 1: Union County Sheriff's Office Arrest Report (Doc. 48-1; Arrest Report) at 1. Based on his training and

experience, Godwin knew that these items could be used to attempt to smuggle drugs into the prison.  See Arrest Report at 1.  Godwin cut into the electrical tape to see whether the cylindrical packages contained drugs.  See id.  Godwin found a green leafy substance inside.  See DOC Report at 1.  Based on his training and experience, Godwin "knew" the substance to be synthetic marijuana.  See Arrest Report at 1.  In the trunk, Godwin also found several money order receipts and notebooks with "individuals names and money amounts."  See id.  Godwin and Swain then called the Union County Sheriff's Office for assistance.  See DOC Report at 1; Sellers's Notice, Ex. 1: Union County Sheriff's Office Call History Record (Doc. 43-1) at 1–2.  In response, the sheriff's office dispatched Sellers to the prison.  See Arrest Report at 1.

Godwin and Swain never put Santiago in physical restraints or in the back of a police vehicle.  See Santiago Dep. at 104–05.  In her deposition, Santiago testified that, prior to the search and during the search, Godwin and Swain never told her that she was detained or under arrest.  See id. at 108.  In the affidavit filed with her responses to the motions for summary judgment, Santiago avers that she asked the corrections officers for her keys to leave after being shown the synthetic marijuana.  Response to Sellers, Ex. 4: Affidavit in Opposition to Summary Judgment (Doc. 54-4; Santiago Aff.) at 1.  Santiago declares that Godwin told her that she could not leave until the deputy arrived. Id.

Once Sellers arrived, he spoke to the corrections officers first. <u>See</u> Santiago Dep. at 51. Santiago could not overhear what Godwin and Swain told Sellers. <u>See</u> <u>id.</u> at 51, 54. According to Sellers's report, the corrections officers told him that Godwin's canine had alerted on the car. <u>See</u> Arrest Report at 1. Godwin told Sellers that Santiago had given consent for the officers to search the car and signed a consent form. <u>See</u> <u>id.</u> He also told Sellers that in searching the car, he found synthetic marijuana, several money order receipts, and notebooks with names and money amounts. <u>See</u> <u>id.</u> Godwin showed Sellers the items he had found in the vehicle. <u>See</u> <u>id.</u>

After Sellers spoke with the corrections officers, he approached Santiago and advised her of her <u>Miranda</u>[2] rights. <u>See</u> Santiago Dep. at 55; Arrest Report at 1. Santiago chose to speak to Sellers without an attorney present. <u>See</u> Arrest Report at 1. According to Santiago, it was at this time that Sellers gave Santiago a consent form for consent to search her car. <u>See</u> Santiago Dep. at 44. Santiago told Sellers that the corrections officers had already conducted a search. <u>See</u> <u>id.</u> at 115–16. But Santiago signed the form after Sellers asked her to sign it, <u>see</u> <u>id.</u> at 43–44, and no one forced her to do so, <u>see</u> <u>id.</u> at 116.[3] In speaking to Sellers, Santiago said that she did not own the change purse, had

---

[2] <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3] As noted, according to Godwin's report, Santiago signed the form consenting to the search of her car <u>before</u> the search occurred. <u>See</u> DOC Report at 1.

no knowledge of it, and did not know it was in her trunk.  See id. at 57–59; Arrest Report at 1.   Santiago asserted that "someone must have left the bag/change purse in her vehicle's trunk and she didn't notice it when she placed her belongings in."  Arrest Report at 1; see Santiago Dep. at 60.  Santiago also told Sellers that she often carpooled with others to visit the prison.  See Arrest Report at 1.  But Santiago did not provide Sellers with the names of anyone she had carpooled with in the past or offer theories about who could have placed the change purse in her trunk.  See Santiago Dep. at 60–62.  Santiago admitted to Sellers that the other items in the trunk were hers.  See Santiago Dep. at 59 ("Q: Okay. And you informed Deputy Sellers that the other items in the trunk were yours; is that correct?  A: Yes."); Arrest Report at 1.  At her deposition, Santiago stated that the other items were "[p]ossibly" hers, but also acknowledged telling Sellers that those items were hers.  Santiago Dep. at 59, 97.

Following their discussion, Sellers arrested Santiago on two charges: (1) possessing a synthetic narcotic with intent to sell, manufacture, or deliver; and (2) introducing a controlled substance onto the grounds of a state prison.  See Arrest Report at 1.  On February 12, 2018, the State Attorney's Office for the Eighth Judicial Circuit of Florida (SAO) filed an Information charging Santiago with those two crimes.  See Sellers's Notice, Ex. 7: Information (Doc. 43-7) at 1.

Santiago has no knowledge about whether Sellers spoke with anyone at the SAO about her case.  <u>See</u> Santiago Dep. at 67.

Santiago entered a pre-trial intervention agreement with the SAO.  <u>See</u> Sellers's Notice, Ex. 8: Pre-Trial Intervention Agreement (Doc. 43-8).  She paid the cost of the program, completed community service, and fulfilled other conditions within a twelve-month period.  <u>See</u> Sellers's Notice, Ex. 9 (Doc. 43-9) at 1.  After Santiago successfully completed the terms of the agreement, the SAO dismissed the charges.  <u>See</u> Sellers's Notice, Ex. 10: Nolle Prosequi (Doc. 43-10) at 1.  During this process, the SAO sent Santiago a letter from the DOC inspector general explaining that corrections officers are not law enforcement officers and that there had been irregularities with canine units used by corrections officers.  <u>See</u> Response to Sellers, Ex. 2 (Doc. 54-2); Response to Sellers, Ex. 1 (Doc. 54-1).

## II.   Procedural History

Santiago initiated this action on September 3, 2021, by filing her Complaint (Doc. 1).  Santiago filed the operative Second Amended Complaint (Doc. 29; Second Amended Complaint) on January 31, 2022.  In Counts I and II of the Second Amended Complaint, Santiago contends that Mark S. Inch, then-Secretary of the DOC, failed to train and supervise his employees and deprived Santiago of her civil rights in violation of 42 U.S.C. § 1983.  <u>See</u> <u>id.</u> ¶¶ 37–43, 47.  In Count III, Santiago maintains that Swain deprived her of her Fourth

and Fourteenth Amendment[4] rights in violation of § 1983. <u>See</u> <u>id.</u> ¶¶ 51–58.

Specifically, Santiago alleges that Swain violated her rights to due process of

law and to be free from unreasonable searches and seizures:

> a. By having plaintiff and her minor daughter unlawfully seized and pulled out of visitation to be escorted to the parking lot;
> b. Then unlawfully searching Plaintiff['s] vehicle by using the unlawful threat of law enforcement authority;
> c. Unlawfully seizing Plaintiff's vehicle and searching Plaintiff's vehicle;
> d. Unlawfully using a K-9 to establish probable cause to unlawfully search a vehicle when the K-9 and its handler do not possess the proper training or law enforcement certification nor authority to establish probable cause[; and]
> e. Unlawfully detaining the Plaintiff when the Defendant does not have any law enforcement authority to detain or arrest.

<u>Id.</u> ¶ 54. In Count IV, Santiago asserts a similar § 1983 claim against Godwin

based on nearly identical allegations. <u>See</u> <u>id.</u> ¶¶ 59–66. In Count V, Santiago

alleges that Sellers unlawfully arrested her without a warrant and without

probable cause in violation of the Fourth and Fourteenth Amendments. <u>See</u> <u>id.</u>

¶¶ 67–80. And in Count VI, Santiago asserts a § 1983 malicious prosecution

claim against Sellers. <u>See</u> <u>id.</u> ¶¶ 81–86.

On September 6, 2022, the Court dismissed Counts I and II, the only

claims asserted against Inch. <u>See</u> Order (Doc. 38). Now, Sellers moves for

---

4 Santiago also mentions the Fifth Amendment in Counts III and IV, but she has represented that these references to the Fifth Amendment were a scrivener's error. <u>See</u> Plaintiff's Response to Defendants', Mark S. Inch, Shawn Swain and Jim Godwin's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Doc. 34) at 13.

summary judgment on Counts V and VI, the two claims asserted against him. <u>See generally</u> Sellers's Motion.  Godwin and Swain move for partial summary judgment on Counts III and IV to the extent that in those counts Santiago asserts claims for unlawful detention or false imprisonment. <u>See</u> DOC Officers' Motion at 12.  To the extent she asserts claims for the unlawful search of her vehicle, however, Godwin and Swain do not move for summary judgment. <u>See</u> <u>id.</u> at 5 n.1.

## III.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[5]  An issue is genuine when the evidence is such

---

[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee's Note 2010 Amends.

The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

that a reasonable jury could return a verdict in favor of the nonmovant.  See

Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting

Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A]

mere scintilla of evidence in support of the non-moving party's position is

insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Est. of

Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of

demonstrating to the court, by reference to the record, that there are no genuine

issues of material fact to be determined at trial.  See Clark v. Coats & Clark,

Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged

its burden, the non-moving party must then go beyond the pleadings, and by its

own affidavits, or by depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial."

Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995)

(internal citations and quotation marks omitted).  Substantive law determines

---

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case.").   In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV.   Discussion

Having carefully considered the record, the parties' arguments, and the applicable law, the Court finds that Sellers's Motion is due to be granted, and the DOC Officers' Motion is due to be denied.

### A.   Claims Against Sellers: Counts V and VI

Sellers argues that summary judgment is due to be granted in his favor as to the § 1983 claims in Counts V and VI because he had probable cause to arrest Santiago for two offenses involving the possession of synthetic marijuana.   See Sellers's Motion at 10, 12.   Sellers argues that, even if a constitutional violation occurred, he is entitled to qualified immunity because

he did not violate Santiago's clearly established rights.  See id. at 18, 21–22.[6] In contrast, Santiago argues that Sellers did not have probable cause to believe that she had possession of the narcotics.  See Response to Sellers at 9–10. Santiago contends that Sellers is not entitled to qualified immunity because his conduct violated her clearly established rights to be free from unreasonable searches and seizures and to be free from an arrest based on illegally obtained evidence.  See id. at 18.

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  Focus on the Family v.

---

[6]  With regard to Santiago's claim for malicious prosecution, Sellers argues that he is entitled to summary judgment for two additional reasons.  See Sellers's Motion at 16–18. First, Sellers asserts that he cannot be liable for Santiago's prosecution because he did not decide whether to prosecute her.  See id. at 16–17.  Second, Sellers contends that Santiago cannot establish that the prosecution terminated in her favor because the charges were dismissed pursuant to a pretrial intervention agreement.  See id. at 16–18.  Because the Court resolves Sellers's Motion in his favor on other grounds, the Court declines to address these arguments.

Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276–77 (11th Cir. 2003) (quotation omitted).

The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As a result, this defense protects from suit "all but the plainly incompetent or those who knowingly violate the law."[7] Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Carr v. Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003).  Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful." Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting Marsh v. Butler County, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) (en banc), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

---

[7]  In determining whether a defendant is entitled to qualified immunity, courts view the facts and all reasonable inferences in the light most favorable to the plaintiff to the extent supported by the record, and then consider "the legal issue of whether the plaintiff's 'facts,' if proven, show that the defendant violated clearly established law." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000); Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

To be entitled to qualified immunity, the defendant bears the initial burden to establish that his conduct was within the scope of his discretionary authority. See Webster v. Beary, 228 F. App'x 844, 848 (11th Cir. 2007); Lee, 284 F.3d at 1194. Here, it is undisputed that, at all times material to this case, Sellers was acting in his official capacity and within the scope of his discretionary authority.[8]  Accordingly, the burden shifts to Santiago to demonstrate that qualified immunity is not appropriate using the test established by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201 (2001).

In accordance with Saucier, the Court must ask whether the facts viewed in the light most favorable to the plaintiff "show the officer's conduct violated a constitutional right." Id.; see also Hope v. Pelzer, 536 U.S. 730, 736 (2002); Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting Scott v. Harris, 550 U.S. 372, 377 (2007)).  The court must also ask whether the right allegedly violated was clearly established at the time of the violation.  Hope, 536 U.S. at 739; Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Underwood v. City of Bessemer, 11 F.4th 1317, 1328 (11th Cir. 2021) ("we ask two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation

---

[8] "A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority."  Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).  Making an arrest is thus a discretionary function for a police officer.  See Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004); see also Lee, 284 F.3d at 1194 (finding that "there can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff]").

of a constitutional right, and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct" (internal quotations omitted)).  The Court may consider these questions in whichever order it chooses, and qualified immunity will protect the defendant if the answer to either question is "no."  Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009);[9] Underwood, 11 F.4th at 1328.

Santiago asserts two distinct § 1983 claims against Sellers arising from her September 3, 2017 arrest.  In Count V, Santiago alleges that Sellers violated the Fourth and Fourteenth Amendments by falsely arresting her without a warrant and without probable cause.  See Second Amended Complaint ¶¶ 67–80.  In Count VI, Santiago asserts that Sellers initiated a malicious prosecution against her in violation of the Fourth Amendment.  See id. ¶¶ 81–86.

"The Fourth Amendment . . . guarantees the right against unreasonable searches and seizures."  Brown, 608 F.3d at 734 n.15 (emphasis added).  "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests."  Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020)  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983

---

[9]  In Pearson, the Supreme Court modified the procedure mandated in Saucier permitting courts the discretion to determine which prong of the qualified immunity analysis should be resolved first.  See Pearson, 555 U.S. at 236.

claim" for false arrest.  <u>Brown</u>, 608 F.3d at 734.  "Malicious prosecution, in contrast, requires a seizure 'pursuant to legal process.'"  <u>Williams</u>, 965 F.3d at 1158 (quoting <u>Black v. Wigington</u>, 811 F.3d 1259, 1267 (11th Cir. 2016)).  To prevail on her malicious prosecution claim in Count VI, Santiago must prove "a violation of [her] Fourth Amendment right to be free from unreasonable seizures, as well as the elements of the common law tort of malicious prosecution." <u>Zargari v. United States</u>, 658 F. App'x 501, 506 (11th Cir. 2016).  "[T]he constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." <u>Paez v. Mulvey</u>, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal citation and quotation marks omitted).  Thus, Sellers can defeat both of Santiago's claims against him by establishing that he had probable cause to arrest Santiago and to initiate a prosecution against her.[10]  <u>See</u> <u>Davis v. City of Apopka</u>, 78 F.4th 1326, 1333 (11th Cir. 2023) ("The existence of probable cause is an absolute bar to a § 1983 claim of false arrest . . . .");  <u>Black</u>, 811 F.3d at 1267 ("The officers

---

[10]  The Court assumes for the sake of argument that Sellers is responsible for the prosecution that the SAO brought against Santiago.

are correct that the presence of probable cause defeats a claim of malicious prosecution.").

Under federal law, "[f]or probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee, 284 F.3d at 1195. This standard is met when "a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (alteration in original) (quoting District of Columbia v. Wesby, 583 U.S. 48, 61 (2018));[11] see also Davis, 78 F.4th at 1333–38 (expounding on the probable cause standard). However, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Brown, 608 F.3d at 734; Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018). Accordingly, the dispositive question for qualified immunity purposes "is not whether actual probable cause existed; rather, the question is whether the officer had 'arguable' probable cause." Carter v. Gore, 557 F. App'x 904, 908 (11th Cir. 2014). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest.'" Lee, 284 F.3d at 1195 (quotation omitted). "This standard

---

[11] In Washington, the Eleventh Circuit rejected an older standard that required "'facts and circumstances . . . [that] would cause a prudent person to believe . . . that the suspect has committed, is committing, or is about to commit an offense.'" 25 F.4th at 899, 902 (second and third alterations in original) (quoting Hardigree v. Lofton, 992 F.3d 1216, 1230 (11th Cir. 2021)).

- 18 -

recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007).   In short, "the plaintiff must overcome qualified immunity by proving that the absence of probable cause was clearly established." Laskar v. Hurd, 972 F.3d 1278, 1295 (11th Cir. 2020).

Here, Sellers arrested Santiago for (1) possessing a synthetic narcotic with intent to sell, manufacture, or deliver in violation of Florida Statutes section § 893.13(1)(a); and (2) introducing a controlled substance onto the grounds of a state correctional institution in violation of Florida Statutes section 944.47(1)(a). See Arrest Report at 1.  Santiago argues that Sellers is not entitled to qualified immunity because he "clearly knows that a person cannot be arrested for possession of contraband when they are not in actual possession of the contraband or in exclusive control of the premises when the contraband is discovered."  Response to Sellers at 18–19.

Under Florida law, "[p]roof of possession of a controlled substance may be actual or constructive." Evans v. State, 32 So. 3d 188, 189 (Fla. 1st DCA 2010) (quoting Taylor v. State, 13 So. 3d 77, 80 (Fla. 1st DCA 2009)).  No party in this case contends that Santiago had actual possession of the contraband when Godwin and Swain conducted their search.   But constructive possession is different.   "Constructive possession exists where the accused does not have

physical possession of the contraband but knows of its presence on or about the premises and can maintain dominion and control over it." Id. Notably under Florida law, "[a]n inference of knowledge may be drawn in cases of exclusive constructive possession, establishing the requisite nexus." Lee v. State, 835 So. 2d 1177, 1179 (Fla. 4th DCA 2002). Thus, in Lee, the court concluded that the state had proven a prima facia case of possession by showing that the defendant was the sole occupant and driver of the vehicle in which the contraband was found. See id. at 1180. Similarly, in Jordan v. State, the court found that the jury could reasonably find that the defendant was in exclusive possession of the car trunk where cocaine was found because, even though a passenger was present, the defendant was the car's driver and had the keys to the trunk in his possession. See 548 So. 2d 737, 738–39 (Fla. 4th DCA 1989) (per curiam). If, however, a defendant is not in exclusive possession of the vehicle, the prosecution must provide additional and independent evidence of the defendant's knowledge of, and ability to exercise dominion and control over, the contraband. Williams v. State, 110 So. 3d 59, 62 (Fla. 2d DCA 2013). Indeed, the defendant's mere proximity to the contraband is insufficient to establish constructive possession. Id. But an "inference of knowledge and dominion may . . . arise where the contraband located in jointly occupied premises is found in or about other personal property which is shown to be owned or controlled by the defendant." Jackson v. State, 995 So. 2d 535, 540 (Fla. 2d DCA 2008).

Here, the Court concludes that Sellers had arguable probable cause for the arrest.  Sellers knew that Santiago was the driver of the vehicle, she had the keys to the trunk where the contraband was found, and the only other occupant was an eleven-year-old minor in Santiago's care.  <u>See</u> Arrest Report at 1.  Santiago admitted owning the items in the trunk other than the change purse in which the narcotics were found.[12]  <u>See</u> Santiago Dep. at 59; Arrest Report at 1.  In addition, Santiago told Sellers that she had opened the trunk to place her belongings there.  <u>See</u> Arrest Report at 1; Santiago Dep. at 60.  Faced with these facts, a reasonable officer could have concluded that Santiago was in possession of the items in the trunk and inferred her knowledge of those items.

Santiago has not met her burden to prove that it was clearly established that Sellers did not have probable cause to arrest her under these circumstances.  As the Supreme Court has explained,

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

---

[12]  Santiago argues that it is disputed whether she admitted to Sellers that the other items in the trunk were hers because she was never shown the other items.  <u>See</u> Response to Sellers at 14.  The Court finds that there is no genuine dispute of material fact.  At her deposition, Santiago said that she admitted that the other items in the trunk were hers.  <u>See</u> Santiago Dep. at 59.  The fact that she had not seen the other items does not contradict the fact that she made the admission to Sellers.

Hope, 536 U.S. at 739 (citation omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  For purposes of this analysis, the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the plaintiff was unconstitutional.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope, 536 U.S. at 741); see also Marsh, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone of qualified immunity.").  The Eleventh Circuit recognizes three sources of law that would provide a government official adequate notice of statutory or constitutional rights: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." Harper v. Lawrence County, 592 F.3d 1227, 1233 (11th Cir. 2010) (quoting Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007)).  Thus, where the words of the federal statute or federal constitutional provision are specific enough "to establish clearly the law applicable to particular conduct and circumstances," then the plaintiff can overcome the qualified immunity privilege, even in the absence of case law.  Vinyard, 311 F.3d at 1350.  In this type of "obvious clarity" case, "the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." Id.

Alternatively, where the conduct alleged is not so egregious as to violate a statutory or constitutional right on its face, courts look to case law to determine whether the law is "clearly established." Id. at 1351.  If the case law contains "some broad statements of principle" which are "not tied to particularized facts," then it may be sufficient to clearly establish the law applicable in the future to different facts.  Id.  However, to provide officials with sufficient warning, the case law must establish a principle with such "obvious clarity" that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."  Id.  Last, in the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law.  Id. at 1352.  Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court.  Id. at 1351.  Although such a case "on all fours" with materially identical facts is not required to establish "fair warning" to government officials, see Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (discussing the impact of Hope on Eleventh Circuit precedent), "existing precedent must have placed the statutory or constitutional question beyond debate," see Mullenix, 577 U.S. at 12 (quoting Malley, 475 U.S. at 341)).

Here, Santiago cites several cases finding that officers did not have probable cause to believe that a suspect had constructive possession of contraband.  <u>See</u> Response to Sellers at 9–10, 18–20.  However, the factual circumstances of those cases are not materially similar to the facts here.  <u>See</u> <u>Zandate v. State</u>, 779 So. 2d 476, 476–77 (Fla. 2d DCA 2000) (automobile passenger); <u>Walker v. State</u>, 741 So. 2d 1144, 1146 (Fla. 4th DCA 1999) (automobile passenger); <u>Rogers v. State</u>, 586 So. 2d 1148, 1150, 1152 (Fla. 2d DCA 1991) (automobile passenger); <u>State v. Rodriguez</u>, 674 So. 2d 899, 900 (Fla. 5th DCA 1996) (visitor to a house); <u>Bell v. State</u>, 792 So. 2d 608, 609–11 (Fla. 4th DCA 2001) (passenger at a train station).  Moreover, these cases cannot clearly establish the law for purposes of qualified immunity because they are not from the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court.  <u>See</u> <u>Vinyard</u>, 311 F.3d at 1351.

Santiago's other arguments also are unavailing.  Santiago contends that Sellers knew that he did not have probable cause and the authority to arrest when no element of the offense was committed in his presence.  <u>See</u> Response to Sellers at 11–12.  However, it is not clearly established under federal law that an officer must personally observe criminal conduct to develop probable cause to arrest.  <u>See</u> <u>Knight v. Jacobson</u>, 300 F.3d 1272, 1276 & n.3 (11th Cir. 2002); <u>Pierre v. City of Miramar, Fla., Inc.</u>, 537 F. App'x 821, 826 n.6 (11th Cir. 2013) (per curiam).  In fact, established Fourth Amendment law generally

allows a law enforcement officer to find that probable cause exists based on the report of a witness or victim.  See Knight, 300 F.3d at 1275 ("By the time he finished talking with Knight's ex-girlfriend, Officer Jacobson had heard enough to warrant a prudent person in believing that Knight had [committed assault].");  see also Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) ("Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause.").  Santiago points to no law clearly establishing that a deputy is not entitled to rely on the reports of correctional officers about incidents that occurred on prison property.

Santiago also argues that Sellers violated her "right to be free [from] false arrest from illegally obtained evidence."  Response to Sellers at 18.  Santiago asserts that Sellers could not have had probable cause when non-law enforcement personnel searched her car in violation of the Fourth Amendment. See id. at 11.  However, even if the corrections officers discovered the synthetic marijuana through an illegal search, Sellers may rely on the evidence obtained in violation of the Fourth Amendment to show in this civil lawsuit that he had arguable probable cause to arrest Santiago.  See Black, 811 F.3d at 1268–69 ("[T]he exclusionary rule does not apply in a civil suit against police officers."). Contrary to Santiago's assertion, there is no constitutional right to be free from arrest on the basis of illegally obtained evidence.  Id. at 1267 ("[T]he exclusionary rule is not a 'personal constitutional right' or a requirement of the

Fourth Amendment; it is a 'judicially created remedy' that is meant to prevent violations of the Fourth Amendment 'through its deterrent effect.'" (quoting United States v. Calandra, 414 U.S. 338, 347–48 (1974))).  Santiago provides no support for her argument that police officers may rely on evidence illegally obtained by other law enforcement officers but may not rely on evidence illegally obtained by private citizens.  See Response to Sellers at 12–13.  Thus, even if such a distinction exists in the law, Santiago has not demonstrated that the distinction is a clearly established constitutional principle.

Next, Santiago maintains that a reasonable officer would have known that Sellers did not have probable cause because he failed to perform a "'presumptive test' to establish probable cause that the powdery substance was contraband."  Response to Sellers at 13–14, 20.  However, Santiago was not in possession of a "powdery substance;" Sellers arrested Santiago for possessing a green leafy substance that he recognized as synthetic marijuana.  See Arrest Report at 1.  No case cited by Santiago holds that Sellers was required to perform a presumptive test to develop probable cause under these circumstances.  See United States v. Diaz-Lizaraza, 981 F.2d 1216, 1223 (11th Cir. 1993); State v. Hillman, 780 So. 2d 156, 157 (Fla. 2d DCA 2001); State v. Rodriguez, 904 So. 2d 594, 595 (Fla. 5th DCA 2005); Sheridan v. State, 850 So. 2d 638, 643 (Fla. 2d DCA 2003) (Kelly, J., dissenting)).

Finally, Santiago argues that Sellers failed to account for the fact that "anyone who had an axe to grind could have been responsible for the drugs." See Response to Sellers at 15.  However, Sellers was not required to "rule out" Santiago's self-serving explanation of the evidence, and he was not required to show that it was more likely than not that she committed the crimes.  See Davis, 78 F.4th at 1334, 1336, 1343–44 (quoting Wesby, 583 U.S. at 61).  Moreover, Santiago did not give Sellers any details to support her theory such as the names of people with whom she had carpooled.  See Santiago Dep. at 60–62. Santiago did not point Sellers to any evidence that established her innocence. Therefore, Sellers is entitled to qualified immunity because he did not "intentionally disregard[ ] pertinent exculpatory information."  Washington v. Rivera, 939 F.3d 1239, 1249 (11th Cir. 2019).

In sum, because a reasonable officer in Sellers's position could have concluded that probable cause existed, Sellers is entitled to qualified immunity on the false arrest claim.  And because Sellers had arguable probable cause to initiate a prosecution, he also is entitled to qualified immunity on Santiago's malicious prosecution claim.  Santiago's arguments to the contrary are unavailing.  Therefore, the Court will grant summary judgment in favor of Sellers and against Santiago on Counts V and VI.

### B.     Claims Against Godwin and Swain: Counts III and IV

Godwin and Swain argue that they are entitled to partial summary judgment because no record evidence establishes that they detained or falsely imprisoned Santiago.  See DOC Officers' Motion at 8–9.  Godwin and Swain contend that their actions in removing Santiago from visitation, speaking with her in a separate room, and escorting her to the parking lot were reasonable under the circumstances because a canine alerted to Santiago's car and DOC employees have the authority "to request a visitor leave a correctional facility." Id. at 9–10.  Godwin and Swain assert that it was not objectively reasonable for Santiago to believe that she was being detained.  See id. at 10.  According to Godwin and Swain, they should be entitled to qualified immunity because they did not violate Santiago's constitutional rights.  See id. at 7.

Santiago contends that Godwin and Swain falsely imprisoned her.  See Response to DOC Officers at 13.  Santiago argues that Godwin and Swain knew that they could not search and seize private citizens because they are not law enforcement officers.  See id. at 8.  Santiago asserts that Godwin and Swain held her in a room, took her car keys, and escorted her outside.  See id. at 13. Santiago notes that Godwin and Swain never told her that she could leave.  See id.  Moreover, Santiago argues that Godwin and Swain acted like law enforcement officers by stating that they could get a warrant to search her vehicle.  See id.  Santiago also maintains that, according to her attached

affidavit, she asked the corrections officers "for her keys so she could leave, and was told not until the deputy arrived to question her."  Id. at 4.

Before determining whether a genuine issue of material fact precludes summary judgment on the merits, the Court must decide whether it may consider the affidavit that Santiago submitted with her response.  In their reply, Godwin and Swain contend that the Court should disregard Santiago's affidavit because it contradicts her deposition testimony.  See DOC Officers' Reply at 2.  Notably, as a general proposition, "[i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition."  Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir. 1980).[13] Nevertheless, in appropriate circumstances, a court may disregard a "sham" affidavit that is inherently inconsistent with a party's prior deposition testimony.  See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657–59 (11th Cir. 1984).  However, the sham affidavit exception should be applied "sparingly because of the harsh effect [it] may have on a party's case."  Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987).  Indeed, an affidavit may be disregarded as a sham only "when a party has given clear

---

[13]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Tippens v. Celotex Corp., 805 F.2d 949, 953–54 (11th Cir. 1986) (alterations in original) (quoting Van T. Junkins, 736 F.2d at 657). In sum, the Eleventh Circuit requires "a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." Rollins, 833 F.2d at 1530 (citing Tippens, 805 F.2d at 954).

Here, Santiago's affidavit is not inherently inconsistent with her deposition testimony. At Santiago's deposition, counsel for Godwin and Swain asked, "At any point prior to the search, and even during the search, did Officer Godwin or Officer Swain tell you that you were detained, or under arrest, or anything like that?" Santiago Dep. at 108 (emphasis added). Santiago replied, "No." Id. In her affidavit, Santiago asserts:

> Once I was outside the facility and after being shown what Godwin explained was illegal contraband of some sort, I asked for my keys back so I could leave, but was told by Officer Godwin I could not leave until the deputy arrived to question me. At this point, even the thought of walking away with my daughter was not an option because I felt like I had no choice but to stay.

Santiago Aff. at 1 (emphasis added). Santiago's answer at her deposition addressed the time before and during the search. In her affidavit, Santiago speaks about the time after the search. Thus, Santiago's affidavit does not

contradict her deposition testimony.  Therefore, the Court will consider the facts asserted in Santiago's affidavit.[14]

Applying the standards of the Fourth Amendment,[15] the Court concludes that a genuine issue of material fact precludes the entry of summary judgment as to Counts III and IV.  For purposes of the Fourth Amendment, "[a] person is seized . . . when the [defendant], by means of physical force or show of authority, terminates or restrains [her] freedom of movement through means intentionally applied."  Brendlin v. California, 551 U.S. 249, 254 (2007) (emphasis, citations,

---

[14] Godwin and Swain also assert that Santiago "did not provide this 'new information' in her answers to interrogatories when she was asked if she has heard any statement or remark by or on behalf of any party concerning any issue in this lawsuit." DOC Officers' Reply at 4.  While true, Godwin and Swain's observation ignores that Santiago did not list any statements by Godwin, Swain, or Sellers in response to that question in the interrogatories. See Interrogatory Answers at 4.  It appears likely that Santiago did not understand the question to be asking her to list statements that Defendants made on the day in question.

[15] Godwin and Swain argue that the Court should analyze Counts III and IV as false imprisonment claims under the Fourteenth Amendment.  See DOC Officers' Motion at 8–9. "Where the Constitution 'provides an explicit textual source of constitutional protection' for the violation alleged," the Court must "apply the analysis that constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of "substantive due process."'" Alcocer v. Mills, 906 F.3d 944, 955 (11th Cir. 2018) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  "Detention, of course, is a type of seizure of the person to which Fourth Amendment protections attach." Id. at 953.  The Fourteenth Amendment, however, "applies when an individual alleges an 'over-detention,' or a continued detention after a right to release, where probable cause supported the charge for which the person was detained." Id. Here, the non-conclusory allegations in the Second Amended Complaint do not give rise to a claim of "over-detention." See Second Amended Complaint ¶¶ 51–66.  Instead, the allegations in the Second Amended Complaint are directed to the Fourth Amendment issue of whether the corrections officers seized Santiago without legal process.  Therefore, the Fourth Amendment provides the proper standard.  To the extent Godwin and Swain suggest that the Fourth Amendment does not apply because they are not law enforcement officers, the Court notes that the Fourth Amendment applies to governmental action by officials who are not law enforcement officers. See New Jersey v. T.L.O., 469 U.S. 325, 335 (1985) ("[T]his Court has never limited the Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police.").

and internal quotation marks omitted).  "When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," the Court must ask whether "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave.'"  Id. at 255 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  The Eleventh Circuit has instructed,

> In determining whether a "reasonable person would feel free to terminate the encounter," courts consider several factors: "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police."

Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006) (quoting United States v. Perez, 443 F.3d 772, 778 (11th Cir. 2006)).  "[T]he ultimate inquiry is whether" the officers' conduct  "exhibited coercion that would make [Santiago] feel [she] was not free to leave."  Id. at 1258.

Here, viewing the evidence in the light most favorable to Santiago, the Court finds that a reasonable jury could conclude that Godwin and Swain detained her.  Godwin and Swain ordered Santiago and her minor daughter to follow them into a smaller room.  See Santiago Dep. at 41–42, 91–92 ("[D]uring visitation, they approached me and said, 'Ms. Santiago, we need you to come

with me, you and your daughter' . . . ."). The corrections officers informed her that they suspected that contraband was in her vehicle. See id. at 42. The officers spoke to her in that room for around 20 minutes. See id. at 92–93. The officers took her keys and told her to follow them to the parking lot. See id. at 47, 94–95 ("When they picked up my keys, they said, 'Come on. We're going to search your car.'"). The officers searched her car without her permission. See id. at 56, 94, 97. During and after the search, the officers retained her keys. See Santiago Aff. at 1. When Santiago asked to leave, Godwin expressly told her that she could not leave until the sheriff's deputy arrived. Id. Under all of these circumstances, a jury could find that a reasonable person would not have felt free to leave.

Godwin and Swain argue that their actions were reasonable because corrections officers have the authority to require visitors to leave the prison. See DOC Officers' Motion at 9–10. However, the evidence viewed in the light most favorable to Santiago shows that Godwin and Swain did not merely revoke Santiago's visiting privileges and ask her to leave. Instead, the corrections officers required Santiago to stay at the prison until the sheriff's deputy arrived.

Godwin and Swain also contend that they are entitled to qualified immunity because they did not violate Santiago's constitutional rights. See id. at 7. But a warrantless seizure without reasonable suspicion or probable cause violates the Fourth Amendment. See Miller, 458 F.3d at 1259; Brown, 608 F.3d

at 734.  Godwin and Swain have not argued that they had reasonable suspicion or probable cause to justify this detention.  Indeed, Godwin and Swain admit that they "could not have seized Ms. Santiago lawfully or unlawfully."  DOC Officers' Motion at 8.  Therefore, Godwin and Swain's argument about qualified immunity is unavailing.  Because the Court finds that there is a genuine issue of material fact as to whether Godwin and Swain seized Santiago, the Court will deny Godwin and Swain's motion for partial summary judgment.

## V.   Conclusion

Viewing the record in the light most favorable to Santiago, the Court concludes that summary judgment in favor of Sellers and against Santiago is due to be granted as to Counts V and VI.  With regard to Counts III and IV, however, a genuine issue of material fact precludes the entry of summary judgment.  Accordingly, it is

**ORDERED:**

1.   Defendant Deputy Phillip Sellers' Motion for Summary Judgment (Doc. 49) is **GRANTED**.

2. Defendant Officer Shawn Swain and Officer Jim Godwin's Motion for Partial Summary Judgment (Doc. 52) is **DENIED**.

3. The Clerk of the Court is directed to terminate Defendant Phillip Sellers from the Court docket and to terminate Defendant Deputy Phillip Sellers' Motion in Limine (Dkt. No. 59). This case will proceed on the remaining claims against Shawn Swain and Jim Godwin.

4. The Court defers entry of final judgment until resolution of all claims in this action.

**DONE AND ORDERED** in Jacksonville, Florida, on October 31, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record

- 35 -